IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

DAVID JOHNS BRYSON,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        No. CIV-05-1150-F
                                       )
ROBERT H. MACY, et al.,                )
                                       )
            Defendants.                )

## O R D E R

Before the court are four motions to dismiss: Defendant Joyce Gilchrist's
Motion to Dismiss (doc. no. 16), Defendant City of Oklahoma City's Motion to
Dismiss (doc. no. 12), Motion to Dismiss of Defendants Walt Wilhelm, David
McBride, Robert Wilder, H.M. Campbell, and Sam Gonzales (doc. no. 39), and
Defendant Robert H. Macy's Motion to Dismiss (doc. no. 34).  For the reasons set
forth in this order, the motions are granted in part and denied in part.

### BACKGROUND[1]

On September 23, 1982, a woman was accosted in downtown Oklahoma City,
driven to the southeast part of town, and sexually assaulted.  She managed to escape
from her attacker by biting his penis and running to a near-by house for help.
Plaintiff, then twenty-eight-years-old, was arrested on October 5 for the kidnaping and
sexual assault, after having sought medical treatment for an injury to his penis.  On

---

[1]At the motion to dismiss stage, the court accepts all of plaintiff's well-pleaded facts as true.
*See*, Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  Thus,
the court recounts the pertinent factual allegations as presented by plaintiff.  To the extent that
details are included that come from outside the complaint, they are not material to the court's
disposition of these motions and were not relied upon in reaching the decisions herein announced.

February 11, 1983, plaintiff was convicted of first-degree rape, kidnaping, and sodomy. He remained incarcerated until October 15, 1999.

In April of 1997, DNA analysis showed that semen collected from the rape victim could not have come from plaintiff. Plaintiff was exonerated and the case against him dismissed on June 24, 2003, following further DNA testing that showed that hairs recovered from the scene and the victim did not match plaintiff's DNA.

Plaintiff filed a civil action in this court on May 27, 2004, alleging that he was denied post-conviction access to evidence in violation of his civil rights. Plaintiff also alleged that defendant Gilchrist, a forensic chemist working for Oklahoma City, "overstated the evidentiary value of her hair comparison. . . ." (CIV-04-662-F, doc. no. 1, Compl. ¶ 25.) However, plaintiff asserted that he did not, at that time, have sufficient information to allege that probable cause was lacking for his arrest or prosecution. (*Id.*) The case was dismissed without prejudice on October 1, 2004.

Plaintiff instituted the present action on September 30, 2005. As in the previous case, plaintiff alleges that defendants denied him post-conviction access to evidence that proved exculpatory. However, plaintiff also now contends that he was confronted with false and manufactured evidence at trial, in violation of a constitutionally-protected liberty interest. According to plaintiff, in the early 1980s, the Oklahoma City Police Department and the District Attorney's Office had a policy and practice of suppressing material exculpatory evidence and manufacturing incriminating evidence to use against criminal defendants. In addition, a policy allegedly existed of overstating the evidentiary value of hair comparisons and the reliability of eyewitness identifications. Plaintiff alleges that these policies and practices, in conjunction with substandard laboratory practices and personnel supervision and training, resulted in evidence being used against him at trial that was falsely incriminating. Specifically, plaintiff complains that the prosecution presented

"bogus" hair comparison evidence that plaintiff's pubic and head hairs linked him to the rape, that Gilchrist's analysis was infallible or nearly infallible, and that the police, acting in conjunction with defendant Macy, the District Attorney, convinced his "former girlfriend to change her testimony so that it would be more favorable to the prosecution." (Compl. ¶¶ 8, 10, 63.)

In his complaint, plaintiff additionally contends that, in the early 1980s, defendants had actual notice that post-trial serology testing was proper and could exonerate a rape defendant. (Compl. ¶ 42). Plaintiff further contends that in 1987, as a matter of administrative policy, defendants determined that DNA analysis was a reliable technique. Plaintiff alleges that DNA evidence was used in a prosecution in Oklahoma County in 1988 and that defendant Macy also stated publicly in 1988 that DNA had the capacity to exonerate. (*Id.* ¶ 41). However, plaintiff alleges that from late 1988, an administrative policy was established by defendants, acting together and led by defendant Macy, to prevent post-conviction DNA testing aimed at proving innocence. *(Id.* ¶ 44). As a result of this policy, the District Attorney's Office resisted plaintiff's efforts to get access to evidence collected from the victim and crime scene and Gilchrist refused to discuss the matter with plaintiff's counsel. (*Id.* ¶¶ 45, 46). According to plaintiff, the access he might have had to evidence before the inception of that policy was thwarted when, in June 1988, Gilchrist erroneously reported that the evidence had been destroyed. (*Id.* ¶ 44).

According to plaintiff, his defense team did not learn that biological evidence still existed, or its location, until December 1990. (Compl. ¶ 47). Plaintiff alleges that his counsel went to the District Attorney's Office to seek an agreement to test the evidence. Plaintiff claims that defendant Macy, acting through an assistant, declined to agree to the DNA testing of the evidence. (*Id* ¶ 48). Plaintiff alleges that he filed an application for post-conviction relief requesting DNA testing, which was opposed

by one of Macy's assistants.  The request for DNA testing was denied.  (*Id.* ¶ 51).
Plaintiff alleges that in 1996, defendant Macy, acting through agents, sought to have
the forensic evidence destroyed.   Plaintiff alleges that his counsel subsequently
learned that the evidence had made its way to defendant Gilchrist.  (*Id.* ¶ 52).  When
his counsel wrote a letter to Gilchrist asking her to preserve the evidence on August
28, 1996, defendant Macy, acting through an agent, told Gilchrist she could ignore the
request.    (Amendment to Compl., doc. no. 45, ¶ 52).   According to plaintiff,
defendants Macy and Gilchrist, as well as Gilchrist's supervisors, continued to oppose
the release of Bryson, despite the April 1997 DNA analysis that exonerated him.
(Compl. ¶ 53).

STANDARD OF REVIEW

A claim is subject to dismissal under Federal Rule of Civil Procedure
12(b)(6) only if it appears beyond doubt that the claimant can prove no set of facts in
support of his claim that would entitle him to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41,
45-46 (1957).   In deciding whether plaintiff fails to state claims on the grounds
asserted, the court accepts as true all well-pleaded facts and draws all reasonable
inferences in plaintiff's favor.  *See, e.g.,* <u>Williams v. Meese</u>, 926 F.2d 994, 997 (10th
Cir. 1991).  The court's role is not to "'weigh potential evidence that the parties might
present at trial, but to assess whether [plaintiff's] complaint alone is legally sufficient
to state a claim for which relief may be granted.'" <u>County of Santa Fe, N.M. v. Public
Serv. Co. of New Mexico</u>, 311 F.3d 1031, 1035 (10th Cir. 2002) (*quoting* <u>Miller v.
Glanz</u>, 948 F.2d 1562, 1565 (10th Cir. 1991)).  A complaint may be dismissed for
failure to state a claim "only when it appears that the plaintiff can prove no set of facts
in support of the claims that would entitle [him] to relief." <u>Jacobs, Visconsi & Jacobs,
Co. v. City of Lawrence, Kansas</u>, 927 F.2d 1111, 1115 (10th Cir. 1991).

"The doctrine of qualified immunity shield public officials . . . from damage actions unless their conduct was unreasonable in light of clearly established law." Anderson v. Blake, 469 F.3d 910, 913 (10th Cir. 2006) (quotations omitted). "Once a defendant pleads qualified immunity as a defense, the plaintiff must show: (1) that the defendant's actions violated a constitutional or statutory right, and (2) that the rights alleged to be violated were clearly established at the time of the conduct at issue." Id. (citation omitted).

The law is clearly established if a reasonable official in the defendant's situation would understand that his or her conduct violated the plaintiff's constitutional rights. Moore v. Guthrie, 438 F.3d 1036, 1042 (10th Cir. 2006). "Recently, the Supreme Court has 'shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.'" Gomes v. Wood, 451 F.3d 1122, 1134 (10th Cir. 2006) (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004) (discussing Hope v. Pelzer, 536 U.S. 730 (2002)). "[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." Anderson, 469 F.3d at 914 (quotation omitted). Thus, government officials can be on notice that their conduct violates established law even in novel factual circumstances. Gomes, 451 F.3d at 1134. Under the fair notice standard, "[t]he degree of specificity required from prior case law depends in part on the character of the challenged conducted. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." Pierce, 359 F.3d at 1298.

## DISCUSSION

Although the individual motions contain identical or redundant arguments and many of the issues raised overlap or are interrelating, the court, in the interest of avoiding unnecessary confusion, addresses the motions separately.

A.     Defendant Joyce Gilchrist's Motion to Dismiss

Plaintiff asserts claims against defendant Gilchrist under 42 U.S.C. § 1983 for violations of his civil rights, under § 1983 for conspiring with others to violate his civil rights, and for negligence.  Defendant Gilchrist argues that:  the § 1983 claims against her should be dismissed for failure to state a claim and because the statute of limitations has expired; the state law claim(s) should be dismissed for non-compliance with The Governmental Tort Claims Act ("GTCA"), 51 O.S. § 151, *et seq.*; and she is shielded from suit under the qualified immunity doctrine.

1.     Section 1983 claims

a.     Alleged constitutional violations and qualified immunity

To state a claim under § 1983, plaintiff must adequately allege the deprivation of a right secured by federal law (constitutional or statutory) by defendant Gilchrist while acting under color of state law.  Hill v. Ibarra, 954 F.2d 1516, 1520 (10th Cir. 1992).

Plaintiff correctly asserts that he has a liberty interest to be free from the use of manufactured evidence at trial.  The Tenth Circuit discussed the contours of a malicious prosecution-style constitutional tort in Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004).  Accordingly, plaintiff may claim a constitutional deprivation under the Fourteenth Amendment if defendant Gilchrist played an instrumental role in his confinement by maliciously withholding exculpatory evidence and fabricating inculpatory evidence that provided the basis for his prosecution.  *Id*. at 1292-93, 1299 (analyzing cases recognizing due process claims against police officers for

withholding exculpatory evidence).  In this case, plaintiff claims that defendant Gilchrist reported that plaintiff's hairs matched multiple hairs from the crime scene, a conclusion later found to be "grossly inaccurate," and that she claimed her conclusions were certain or near-certain.  (Compl. ¶¶ 8-11.)  According to plaintiff, authorities ignored exculpatory evidence and focused on evidence provided by defendant Gilchrist, which was more favorable to the prosecution.  (*Id.*, ¶¶ 62-63.) Plaintiff also contends that defendant Gilchrist offered this false evidence intentionally or with reckless disregard for the truth.  Based on these allegations, plaintiff has asserted a constitutional violation against defendant Gilchrist for malicious prosecution.

As in <u>Pierce</u>, defendant Gilchrist is not protected from suit under the doctrine of qualified immunity for those alleged actions, because a reasonable person in her position in 1982 and 1983 would have realized that she was violating plaintiff's constitutional rights.  In this case, defendant Gilchrist was on fair notice in 1982, based on Supreme Court precedent, that an "egregious" misuse of legal procedure, including providing false information to support a prosecution was constitutionally prohibited.  *See,* <u>Pyle v. Kansas</u>, 317 U.S. 213 (1942) (finding allegation that imprisonment resulted from authorities' knowing use of perjured testimony and suppression of favorable evidence charged a deprivation of constitutional rights); <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) (establishing that due process prohibits withholding exculpatory evidence).  In the court's view, no reasonable forensic chemist, in 1982, would have believed that intentionally falsifying or recklessly offering, as irrefutable, a scientific opinion that plaintiff's hairs matched those at the crime scene was consistent with plaintiff's constitutional rights.  The Tenth Circuit reasoned as follows in a case involving similar claims:

> We have no doubt that, in light of these holdings, an official in Ms. Gilchrist's position in 1986 had "fair warning" that the deliberate or

reckless falsification or omission of evidence was a constitutional violation–even though the arrest had already occurred.  There is no moral, constitutional, common law, or common sense difference between providing phony evidence in support of an arrest and providing phony evidence in support of continued confinement and prosecution.  Even if there were no case directly on point imposing liability on officials whose falsification of evidence occurred at the post-arrest stage, an official in Ms. Gilchrist's position could not have labored under any misapprehension that the knowing or reckless falsification and omission of evidence was objectively reasonable.

Qualified immunity is designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions, from personal liability on account of later-announced, evolving constitutional norms.  Ms. Gilchrist's alleged misconduct did not stem from a miscalculation of her constitutional duties, nor was it undertaken in furtherance of legitimate public purposes that went awry.  Rather, as alleged, Ms. Gilchrist engaged in a deliberate attempt to ensure the prosecution and conviction of an innocent man.  Such conduct, if it can be proven at trial, violated Mr. Pierce's constitutional rights with "obvious clarity."

Pierce, 359 F.3d at 1299-1300.  Based on the then-existing case law and the egregious nature of the alleged conduct, the court holds that the unconstitutionality of Gilchrist's alleged actions was as apparent in 1982 as in 1986.

The court now turns to the issue of whether defendant Gilchrist's alleged post-conviction conduct of preventing access to potentially exonerating evidence for DNA testing violated plaintiff's constitutional rights.  Courts which have addressed the issue of whether an incarcerated person has a federally protected right to gain post-conviction access to potentially exculpatory evidence for DNA testing have reached different conclusions.  Compare, Breest v. New Hampshire Atty. Gen., 2007 WL 29070, *4 (D.N.H. Jan. 3, 2007); Wade v. Brady, 460 F. Supp. 2d 226, 249 (D. Mass. 2006); Osborne v. District Attorney's Office for Third Judicial Dist., Anchorage, Alaska, 445 F. Supp. 2d 1079, 1081 (D. Alaska 2006); Godschalk v. Montgomery

County District Attorney's Office, 177 F. Supp. 2d 366, 370 (E.D. Pa. 2001); Harvey v. Horan, 285 F.3d 298, 304-326 (4th Cir. 2002) (Luttig, J., concurring in denial of rehearing en banc on mootness grounds) *with* Grayson v. King, 460 F.3d 1328, 1339-40, 1343 (11th Cir. 2006); Harvey v. Horan, 278 F.3d 370, 376-77 (4th Cir. 2002); Alley v. Key, 431 F. Supp. 2d 790, 803 (W.D. Tenn. 2006), *aff'd*, 2006 WL 1313364 (6th Cir.) (unpublished), *cert. denied*, 126 S.Ct. 2973 (2006).  Given the alleged facts and circumstances of this case, the court agrees with those courts that have recognized a federally protected right to post-conviction access to potentially exculpatory evidence for DNA testing.  The court specifically concurs with the analysis in Wade, 460 F. Supp. 2d at 243-249, as to the viability of a claim based on that right, under due process principles.  As in Wade, none of the limitations on a defendant's due process right to examine potentially exculpatory evidence as set forth in U.S. v. Valenzuela-Bernal, 458 U.S. 858 , 868-869 (1982) and Pennsylvania v. Ritchie, 480 U.S. 39, 58-60 (1987), apply to this case.  There are no doubts regarding the potential materiality of the evidence and no conflicting confidentiality interests.  As to the limitation in Youngblood, 488 U.S. at 58, of a showing of "bad faith," the court finds that the allegations in the complaint and reasonable inferences from the allegations indicate bad faith on the part of defendants.

The court also notes that plaintiff's allegations and reasonable inferences from the allegations constitute more than a mere denial of post-conviction access to potentially exculpatory evidence by defendant Gilchrist.  The allegations in the complaint, and reasonable inferences from those allegations, indicate a "bad faith" denial of post-conviction access to potentially exculpatory evidence.  The court concludes that plaintiff's specific allegations in this case are manifestly equivalent to a bad faith destruction of evidence.  *See*, Wade, 460 F. Supp. 2d at 246, n. 36 ("Moreover, [f]rom a constitutional perspective, there is no functional difference

between denying access to evidence in the prosecutor's possession and bad faith destruction of that evidence; in both cases, evidence which could form a basis for exonerating the defendant has been deliberately denied to the defendant." (quotations omitted)); Harvey, 285 F.3d at 318, Judge Luttig's concurring opinion ("The denial of access in this circumstance would not be, do I contend, the strict equivalent of bad-faith destruction of potentially exculpatory evidence . . . But in a system that prizes fairness and truth above all else, it comes so perilously close to such as not to be permitted." (citation omitted)), *but see*, Grayson, 460 F.3d at 1328, 1338 n. 6 (rejecting plaintiff's argument that the state's refusal to grant access to evidence is the functional equivalent of bad-faith destruction violating the requirements of Youngblood). Even though the evidence existed, defendants intentionally prevented plaintiff from subjecting the evidence to DNA testing that would have exonerated him. *Id*. From a constitutional perspective, the evidence was destroyed or otherwise unavailable to plaintiff. *Id.*

As to whether defendant Gilchrist's actions violated clearly established law, the court concludes that they did. In Arizona v. Youngblood, 488 U.S. 51 (1988), the Supreme Court established the standard for determining whether law enforcement officials have infringed on a defendant's due process rights by failing to preserve "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. at 57. The Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. at 58. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id*. at 56 n. *. Although Youngblood addresses law enforcement

officials' constitutional duty to preserve evidence *prior* to conviction, the court agrees with the Third Circuit's decision in Yarris v. County of Delaware, 465 F.3d 129, 142 (3rd Cir. 2006), that the Youngblood decision did not indicate "that it was limited to its temporal context." *Id*. at 142. The Youngblood decision was decided on November 29, 1988. The complaint alleges that defendant Gilchrist lied about the existence of the exculpatory evidence in a memo dated June 6, 1988.[2] (Compl. ¶ 18). Nonetheless, it also alleges that later in 1988, she refused to talk with any defense counsel who contacted her regarding forensic testing. (*Id*. ¶ 45). It additionally alleges that in 1996 defendant Macy told defendant Gilchrist to ignore the request and reasonable inferences from the allegations is that she ignored the request. (*Id*. ¶ 52). The complaint also alleges that she continued to oppose the release of plaintiff, despite exonerating results of the April 1997 testing (indicative of bad faith in the entire sequence of events). (*Id*. ¶ 53). The court concludes that these allegations, along with allegations that defendant Gilchrist knew the reliability of DNA testing, knew of the potentially exonerating evidence, was aware that plaintiff was actively seeking the effort to get access to the evidence, that she had previously lied about its existence,

---

[2]In Yarris, the Third Circuit concluded that the alleged conduct occurred after the Youngblood decision. The court, however, noted that "even if the [ ] alleged conduct occurred prior to Youngblood, the constitutional right at issue nonetheless may have been clearly established. S*ee*, Hope v. Pelzer, 536 U.S. 730, 741 [ ] (2002) (explaining that in some cases 'a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even through the very action in question has [not] previously been held unlawful.')" Yarris, at 143, n.8. This court agrees but need not definitively decide the issue in regard to the June 1988 memo in light of Gilchrist's subsequent actions. The court, however, notes that the Supreme Court addressed preservation of evidence in 1984 in California v. Trombetta, 467 U.S. 479 (1984). Although the Court held that the due process clause did not require law enforcement agencies to preserve breath samples of suspected drunk drivers in order for results of breath-analysis to be admissible in prosecutions, the court, in so ruling, found that the officers in the case were acting "in good faith and in accord with their normal practice," the record contained "no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence," "the chances [were] extremely low that preserved samples would have been exculpatory" and "respondents were [not] without alternative means of demonstrating their innocence." Trombetta, 467 U.S. at 488-490. None of these reasons are present in this case.

that she was involved with establishing administrative policy to prevent post-conviction DNA testing and that defendant Gilchrist had manufactured evidence and suppressed evidence for plaintiff's trial, are sufficient to withstand defendant Gilchrist's qualified immunity challenge at this stage of the proceedings.  The court concludes that defendant Gilchrist had fair warning, in light of pre-existing Supreme Court precedent, that the due process right at issue here existed in 1988 and thereafter and that her alleged violation of that right was unconstitutional.

### b.   Timeliness of malicious prosecution claim

Defendant Gilchrist also argues that the § 1983 malicious prosecution claim is time-barred because it was not asserted in plaintiff's original action.  The timeliness of plaintiff's § 1983 claim is measured by Oklahoma's statute of limitations for personal injury actions and by application of the state's tolling rules and savings provision.  Brown v. Hartshorne Pub. Sch. Dist. #1, 926 F.2d 959, 962 (10th Cir. 1991).  There is no dispute that a two-year statute of limitations applies, which began to run on June 24, 2003, when the case against plaintiff was dismissed.  Although plaintiff brought a civil action asserting a § 1983 claim against Gilchrist and others less than a year later, that action was dismissed without prejudice in October 2004.  The present action was not instituted until September 30, 2005, after the two-year statute of limitations had expired.

However, by statute, Oklahoma law affords plaintiffs an additional year if a timely-filed action is subsequently dismissed other than on the merits.  12 O.S. § 100.  Thus, that savings provision applies here, because plaintiff's original action was dismissed without prejudice, In re the Matter of Speake, 743 P.2d 648, 650 n.3 (Okla. 1987), *if* the May 2004 complaint alleged the operative events upon which plaintiff now relies and put Gilchrist "*on notice of the factual setting* underlying the legal

demands pressed against [her]," Chandler v. Denton, 741 P.2d 855, 863 (Okla. 1987) (emphasis in original).

Plaintiff has alleged the factual predicate for applying the savings provision. However, the parties vigorously contest whether the May 2004 complaint actually alleged the operative events and put Gilchrist on notice of the potential claim. Although the court is normally constrained to consider only the allegations in plaintiff's well-pleaded complaint on a motion to dismiss, it will review the referenced May 2004 complaint in reaching a decision on the statute of limitations dispute. *See*, County of Santa Fe, N.M., 311 F.3d at 1035 (noting that trial courts may consider documents referred to in the complaint if they are central to the claim and authenticity is not disputed); *see also*, New England Health Care Employees Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

In this instance, the thrust of the 45-page May 2004 complaint was that defendants wrongfully denied plaintiff *post-conviction* access to evidence that ultimately led to his exoneration and release from prison, seventeen years after being convicted. However, plaintiff also alleged that Gilchrist had "examined certain hairs that were obtained from the clothing of the victim and from the car." She also alleged that "[plaintiff] consented to the pulling of hairs from his body" and that Gilchrist "determined from microscopic examination of the hairs that several of the hairs were consistent with" plaintiff's hair. (CIV-04-662-F, Compl. ¶ 24.) Moreover, plaintiff alleged that Gilchrist "overstated the evidentiary value of her hair comparison . . . ." *Id.* at ¶ 25. Plaintiff stated that he did not, at that time, have sufficient information to allege that probable cause was lacking for his prosecution. He stated that if other facts developed, he may ask for leave to amend his complaint. *Id.*

The court finds that plaintiff clearly foreshadowed the current malicious prosecution claim in his May 2004 complaint and put defendant Gilchrist on notice of the operative events and factual setting underlying that claim. Specifically, plaintiff alleged then, as now, that defendant Gilchrist overstated the evidentiary value of her hair comparisons. In addition, plaintiff identified the examination that defendant Gilchrist conducted and her conclusions, which he now contends were false or manufactured to inculpate him. Finally, plaintiff explained that he might seek leave to amend his complaint if new information surfaced. Under the circumstances, defendant Gilchrist can hardly claim surprise at the new theory of liability that is asserted against her. Accordingly, the court holds that Oklahoma's savings provision applies and plaintiff's malicious prosecution claim against defendant Gilchrist is timely.

        c.     <u>Timeliness of conspiracy claim</u>

As to the conspiracy claim under § 1983, the court concludes that the allegations in the May 2004 complaint do not suggest that Gilchrist conspired with others to present false or manufactured evidence inculpating plaintiff in the 1982 rape. In contrast, plaintiff now argues that Gilchrist and others "conspired to create a criminal justice operation where convictions could be obtained through questionable and/or fraudulent laboratory techniques, the suppression of exculpatory evidence, and the creation of unreliable evidence." (Compl. ¶ 84.) Because plaintiff's prior suit contained no allegations that a *conspiracy* existed to deprive him of constitutional rights *before* conviction, the factual setting surrounding and the operative events underlying plaintiff's § 1983 conspiracy claim were not present in the May 2004

complaint.  Therefore, the § 1983 conspiracy claim against Gilchrist is dismissed as untimely.[3][4]

## 2.    State law claim

Defendant Gilchrist also complains that plaintiff's state law claim of negligence resulting in wrongful imprisonment is barred by the statute of limitations in the GTCA or fails to state a claim upon which relief can be granted based upon a failure to comply with the GTCA.

To the extent plaintiff alleges that defendant Gilchrist was acting within the scope of her employment when she acted negligently, the court shall address the timeliness and adequacy of such claim in connection with the City's motion.  Under the GTCA, the City, as defendant Gilchrist's employer, would be liable, exclusively, for any loss resulting from her alleged tort if committed while she was acting within the scope of her employment.  51 O.S. § 153; 51 O.S. § 152 (defining "political subdivision" to include municipalities).

To the extent plaintiff alleges defendant Gilchrist was acting outside the scope of her employment, the court concludes that dismissal is not appropriate.  Plaintiff was not required to comply with the procedural requirements of the GTCA prior to filing his claim against defendant Gilchrist.  The Oklahoma Supreme Court has concluded that the GTCA's procedural requirements do not apply to a claim based upon allegations that a governmental employee was acting outside the scope of her

---

[3]Plaintiff explains in Count II that these "conspiracies" deprived him of his right to due process of law, his right to a fair trial, and his right not to be subjected to cruel and unusual punishment. (Compl. ¶ 85.) However, the underlying conduct relates to pre-trial and trial rights and activities. (*Id.* ¶ 84.) Therefore, the court does not read the conspiracy claim to encompass any post-conviction concerted actions.

[4]It does not appear from the court's reading of Gilchrist's motion that she has challenged the timeliness of the § 1983 claim for denial of post-conviction access to forensic evidence for DNA testing.  Other defendants have challenged the timeliness of this claim.  The court will specifically address the issue in its discussion of the City's motion.

employment.  *See* Pellegrino v. State ex rel. Cameron University, 63 P.3d 535, 540 (Okla 2003).  An employee is not acting within the scope of her employment if she "acted maliciously or in bad faith."  *Id*. at 537.  Defendant Gilchrist's actions, as described by plaintiff, may fairly be characterized as taken in bad faith and thus, outside the scope of her employment.  Therefore, plaintiff may proceed with this claim without complying with the GTCA procedural requirements, as argued by defendant Gilchrist.

In sum, plaintiff's § 1983 claims against Gilchrist for malicious prosecution and for bad faith denial of post-conviction right of access to potentially exculpatory evidence for DNA testing (Count I) remain.  Plaintiff's § 1983 conspiracy claim (Count II) is dismissed as untimely.  Plaintiff's negligence claim against Gilchrist (Count V),[5] to the extent it is based upon actions taken outside the scope of her employment, remains.

B.     City of Oklahoma City's Motion to Dismiss

Plaintiff asserts claims against the City for implementing or allowing improper policies and procedures that led to the constitutional violations underlying his § 1983 claims and for his wrongful conviction.  The City argues that the § 1983 claims should be dismissed because (1) plaintiff has failed to identify constitutional violations; (2) his claims are untimely; and (3) negligence cannot support a § 1983 claim.  In addition, the City argues that the state law claim for wrongful conviction should be dismissed for failure to comply with the GTCA.  The City further argues that plaintiff's claim for punitive damages should be dismissed in light of existing federal and state laws.

---

[5]The court notes that "Count V" is misnumbered.  In his complaint, plaintiff skips from Count III to Count V.  The court however shall continue to refer to this count as "Count V."

1.      Section 1983 claims

      a. Identification of constitutional violations

As a municipality, the City cannot be held liable under § 1983 solely because an employee inflicted injury.  Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978).  To establish municipal liability, a plaintiff must show an underlying constitutional violation.  *See*, City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  The plaintiff must also show: (1) the existence of a municipal policy or custom and (2) a direct causal link between the policy or custom and the violation alleged.   City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989).

As stated above,  plaintiff had a constitutional right not to be subjected to false or manufactured evidence at trial and may assert claims under § 1983 for malicious prosecution.  Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004).

Additionally, as stated above, the court, persuaded by the decisions of Wade v. Brady, Osborne v. District Attorney's Office for Third Judicial Dist., Anchorage, Alaska, and Godschalk v. Montgomery County District Attorney's Office, as well as Judge Luttig's concurring opinion in Harvey v. Horan, concludes that plaintiff had a constitutional right of post-conviction access to potentially exculpatory evidence for DNA testing.  However, as previously discussed, plaintiff's claim does not  involve the mere denial of post-conviction access to potentially exculpatory evidence, rather, it involves the "bad faith" denial of post-conviction access to potentially exculpatory evidence, which is unconstitutional under the precedent of Arizona v. Youngblood, 488 U.S. 51 (1988).

Accordingly, the court concludes that plaintiff's allegations sufficiently assert underlying constitutional violations which may be pursued under § 1983.

In its motion, the City has not specifically challenged the sufficiency of plaintiff's allegations demonstrating "the existence of a municipal policy or custom"

or a "direct causal link between the policy or custom and the violation alleged." Nevertheless, to the extent that the motion could be construed as raising such a challenge, the court, guided by the standards for evaluating a Rule 12(b)(6) motion, concludes that plaintiff's complaint alleges facts sufficient to support municipal liability by the City under § 1983.

Plaintiff, in his complaint, alleges that his § 1983 action for damages is authorized under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.  (Compl. ¶ 22(2)).  The City, in its motion, challenges plaintiff's action under each of the cited amendments.  The court concludes that the Fourteenth Amendment (due process clause), as discussed herein, is most pertinent and supports plaintiff's § 1983 claims for malicious prosecution and bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing.  The court therefore concludes that any claim alleged against the City as well as the other defendants under the First, Fourth, Fifth, Sixth and Eighth Amendments should be dismissed.[6]

### b. Negligence

The City, pointing to certain portions of the complaint, contends that plaintiff's allegations appear to support only a negligence allegation.  The City contends that negligence cannot support plaintiff's § 1983 claims.  The court, however, concludes that plaintiff's allegations and reasonable inferences therefrom, viewed in a light most favorable to plaintiff, are sufficient to support § 1983 liability.  And despite the City's arguments to the contrary, these averments do suffice to allege bad faith under Youngblood.

---

[6]The City, in its briefing, additionally challenges the § 1983 claims alleged against the defendant city employees, in their official capacities.  The court will address the official capacity claims in connection with the dismissal motion of defendants Wilhelm, McBride, Wilder, Campbell and Gonzales.

c. Timeliness of § 1983 claims

With respect to the timeliness of his malicious prosecution and post-conviction access to potentially exculpatory evidence for DNA testing claims, the court finds that the claims did not accrue until charges against him were dismissed on June 24, 2003, because success on both claims, as pled by plaintiff, would have necessarily implied that his conviction was wrongful.  Heck v. Humphrey, 512 U.S. 477 (1994).  The original action was filed within the applicable two-year statute of limitations.  By operation of the Oklahoma savings provision, the § 1983 claim for bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing alleged in the instant complaint is timely.  In addition, for the reasons discussed in the context of defendant Gilchrist's motion and because facts supporting the City's liability were included or alluded to generally, the court finds that the allegations in the May 2004 complaint put the City on notice of the operative events underlying plaintiff's malicious prosecution claim.  Therefore, by operation of the Oklahoma savings provision, the malicious prosecution claim filed in the instant complaint is also timely. Therefore, the court rejects the City's arguments that the § 1983 claims are untimely.

d. Punitive damages

Citing to the authority of City of Newport v. Fact Concerts, 453 U.S. 247 (1981), the City contends that punitive damages are not recoverable against a municipality in a § 1983 suit.  Consequently, the City asserts that plaintiff's claim for punitive damages must be dismissed.  Plaintiff has not addressed this particular argument in his briefing.  Upon review of the cited authority, the court agrees with the City's position and concludes that plaintiff's request for punitive damages for his § 1983 claims against the City must be dismissed.

2.    State law claims

In his complaint, plaintiff asserts a claim for negligence resulting in wrongful imprisonment (Count V) and a claim under the GTCA for wrongful conviction (Count VI).[7]  As to the former claim, to the extent plaintiff alleges that defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell and Gonzales were acting within the scope of their employment when they acted negligently, the City, as defendants' employer, would be liable, exclusively, for any loss resulting from their alleged torts.  51 O.S. § 153; 51 O.S. § 152.  Under 51 O.S. § 156(A), a person having a claim against a political subdivision must present a claim to that political subdivision  for appropriate relief including the award of damages.  This claim, according to 51 O.S. § 156(B), must be filed within 1 year of the date the loss occurs or be forever barred.

Plaintiff fails to plead compliance with the GTCA procedural requirements in regard to the claim for negligence resulting in wrongful imprisonment (Count V).  To the contrary, plaintiff contends that his "negligence complaint does not depend on the nuances of the Oklahoma Tort Claims Act."  (Doc. no. 24, Pl.'s Resp. at 5.)  For the reasons stated above, the court does not agree.  Because the complaint fails to plead that plaintiff presented a claim to the City as required by § 156(A) and within the time prescribed by § 156(B), the court concludes the negligence resulting in wrongful imprisonment claim (Count V) against the City, based upon negligent acts of defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell and Gonzales, committed within the scope of their employment, must be dismissed for failure to comply with the GTCA procedural requirements.

To the extent that plaintiff contends that the "tort claims notice" referenced in Count VI (Compl. ¶ 102) would also apply to the negligence claim alleged in Count

---

[7]Te court notes that this count should actually be "Count V."  The court shall continue to refer to this count as "Count VI."

V and assuming without deciding that the "tort claims notice" would include such claim, the court concludes that plaintiff's negligence claim is still subject to dismissal as time-barred.  The GTCA provides in pertinent part:

> No action for any cause arising under this action . . . shall be maintained unless valid notice has been given and the action is commenced within one hundred eighty (180) days after denial of the claim as set forth in this section.

*See*, 51 O.S. § 157(B).  A claim is deemed denied under the GTCA if the political subdivision "fails to approve the claim in its entirety within ninety (90) days, unless the . . . political subdivision has denied the claim or reached a settlement with the claimant before the expiration of that period."  51 O.S. § 157(A).  According to the complaint, plaintiff gave his "tort claims notice" on May 26, 2004, within 1 year of the dismissal of plaintiff's criminal case.  (Compl. ¶ 102).  Plaintiff's original complaint was filed one day later, on May 27, 2004.  However, plaintiff was prohibited from filing suit in regard to his claim before expiration of the 90-day period, unless the claim had been denied.  Hathaway v. State ex rel. Med. Research & Technical Auth., 49 P.3d 740, 742-43 (Okla. 2002).  Plaintiff has not alleged that his claim was denied prior to the filing of his original complaint.  As a result, his original suit was premature and subject to dismissal.  *Id*. at 743.  The Oklahoma Supreme Court has explained:

> A governmental tort claims action may not be initiated against a governmental entity unless a notice of claim has been timely presented and the claim has been denied.  When a claimant initiates a governmental tort claims action before the claim has been denied, the action is premature and it is subject to dismissal both before and after the 90-day waiting period in § 157(A) has expired.

*Id*. at 744.  Since plaintiff's original complaint was premature and did not ripen into a timely action when the 90-day period for determining the claim expired, *id*. at 743,

plaintiff had to file the instant action within 180 days after the 90-day period expired. Plaintiff did not amend the original complaint within 180 days after the expiration of the 90-day period. Moreover, the instant complaint was not filed until well over one year after the "tort claims notice" was filed. Consequently, plaintiff failed to comply with § 157(B) because his negligence claim was not filed within 180 days after the expiration of the 90-day period.[8] The failure of plaintiff to meet the 180-day time limitation of § 157(B) operates to bar judicial enforcement of the claim against the City. *See*, Cruse v. Board of Com'rs of Atoka County, 910 P.2d 998, 1004 (Okla. 1995). The court therefore concludes that the negligence resulting in wrongful imprisonment claim against the City, based upon the negligent acts of defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell and Gonzales, must be dismissed.[9]

As indicated, plaintiff also asserts a claim for wrongful conviction (Count VI). The City contends that the claim should be dismissed because (1) the "tort claims notice" did not assert a tort claim for wrongful conviction as it was based solely on Gilchrist's post-trial conduct, specifically, her 1988 statement that the evidence had been destroyed; (2) a tort claim based upon Gilchrist's post-trial conduct would be barred because plaintiff did not file his "tort claims notice" within one year of his date the loss occurred; (3) the GTCA exempts the City from liability for Gilchrist's post-trial conduct; and (4) a tort claim based upon pre-trial or post-trial conduct is untimely as plaintiff did not file his claim within 180 days from the 90-day period.

The court need not decide whether the "tort claims notice" included a "wrongful conviction" claim. Even if the "tort claims notice" filed by plaintiff can be construed

---

[8]The court recognizes the 90-day period may be extended by written agreement between the claimant and the governmental entity and that it is also subject to tolling, waiver or estoppel. Hathaway, 49 F.3d at 743, n. 9. No such reasons have been alleged to apply to the instant case.

[9]In its papers, the City has also challenged plaintiff's request for punitive damages in regard to this claim. As the court is dismissing the claim, the court need not address the punitive damages issue.

to include both pre-trial and post-trial conduct, the court concludes that the claim for wrongful conviction is time-barred.  As previously discussed, plaintiff's original complaint was filed prematurely, as it was filed before the expiration of the 90-day period.  The original complaint was not amended within 180 days of the expiration of the 90-day period.  Nor was the instant complaint filed within 180 days.  Therefore, because plaintiff's wrongful conviction claim against the City  was not filed in compliance with the GTCA, specifically § 157(B), the court finds that it must be dismissed as time-barred.  *See*, Cruse, 910 P.2d at 1004.

In sum, the § 1983 claims against the City (Count III), to the extent based upon violations of the Fourteenth Amendment, remain.  Any § 1983 claim against the City and all other defendants (Count I and Count III) based upon violations of the First, Fourth, Fifth, Sixth, and Eighth Amendments are dismissed.  The state law claim against the City (based upon defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell and Gonzales acting within the scope of their employment)  for negligence resulting in wrongful imprisonment (Count V) and the state law claim against the City for wrongful conviction (Count VI) are dismissed.

C.      Defendants Wilhelm, McBride, Wilder, Campbell, and Gonzales' Motion to Dismiss

1.  Section 1983 claims

a.  Official capacity claims

Plaintiff asserts claims under § 1983 for malicious prosecution and bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing against defendants Wilhelm, McBride, Wilder, Campbell, and Gonzales, in both their individual and official capacities.

Defendants contend that the official capacity claims against defendants Wilder, McBride(as chief of police) and Gonzales should be dismissed because the claims are

the same as the claims against the City. Defendants also contend that the official capacity claims against defendants Campbell, Wilhelm and McBride (as assistant chief) should be dismissed because these defendants did not possess final policymaking authority.

The Tenth Circuit has stated that "'[[a] section 1983] suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." <u>Myers v. Okla. County Bd. of County Com'rs</u>, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998) (quoting <u>Watson v. City of Kansas City</u>, 857 F.2d 690, 695 (10th Cir. 1988) (citing <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985)); *see also*, <u>Graves v. Thomas,</u> 450 F.3d 1215, 1218 (10th Cir. 2006) (plaintiff's § 1983 claim against police officer and chief of police in their official capacities is actually a claim against the town). Because plaintiff has alleged the claims under § 1983 against the City (and the claims have not been dismissed as previously discussed), the court concludes that the official capacity claims against defendants Wilhelm, McBride, Wilder, Campbell, and Gonzales are redundant. Similarly, the court concludes that the official capacity claims against defendant Gilchrist are redundant. Therefore, the court concludes that the claims should be dismissed. The court will now turn to the § 1983 claims alleged against defendants Wilhelm, McBride, Wilder, Campbell and Gonzales, in their individual capacities.

b.  <u>Supervisor liability and qualified immunity</u>

At the outset, the court concludes that the § 1983 claims for malicious prosecution against Wilder and Gonzales, in their individual capacities, should be dismissed. According to plaintiff's allegations, both of these defendants served as police chief after 1985 (Compl. ¶¶ 29 & 31). Consequently they cannot be held liable for plaintiff's alleged malicious prosecution in 1982-1983.

As to the malicious prosecution claims against defendants Wilhelm, McBride and Campbell, defendants argue that the claims should be dismissed because plaintiff

24

has not pled their personal participation in the alleged constitutional violation, which, defendant argues, is necessary to support supervisor liability.

A supervisor cannot be held strictly liable under § 1983 for his subordinate's civil rights violations. <u>Jenkins</u>, 81 F.3d at 994. Instead, plaintiff "must establish a deliberate, intentional act by the supervisor to violate constitutional rights. "A plaintiff may satisfy this standard by showing the defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." <u>Id.</u> at 994-95 (citations omitted). However, a supervisor's liability may also rest on his failure to supervise or train when that failure "is so reckless or grossly negligent that future misconduct is almost inevitable." <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1528 (10th Cir. 1988).

Plaintiff alleges that defendants Campbell and Wilhelm were defendant Gilchrist's supervisors and responsible for developing and enforcing administrative policies for the police lab and responsible for supervising and training defendant Gilchrist. (Compl. ¶¶ 27, 28.) In addition, defendant McBride "was directly responsible as assistant chief [of police] for administrative policy regarding the laboratory." (Compl. ¶ 30.) Plaintiff does not allege that they engaged in intentional or deliberate acts against plaintiff specifically or that they personally directed defendant Gilchrist to manufacture and falsify evidence. Rather, plaintiff contends that defendants Wilhelm, McBride and Campbell were reckless in failing to more closely monitor defendant Gilchrist and review her work and that they, along with defendant Macy and others, knew that defendant Gilchrist's claim that hair comparisons could render certain or near certain identification, was impossible or unsound.

Although the complaint does not allege that either defendant had any direct involvement in plaintiff's case or were aware of what information defendant Gilchrist was providing to the District Attorney's Office, the alleged tolerance of and failure to

correct defendant Gilchrist's practice of overstating the scientific and evidentiary value of her hair analysis conclusions could, if established, support their liability for plaintiff's malicious prosecution based on that evidence.  Assuming from the allegations as pleaded that these defendants were responsible for training and supervising defendant Gilchrist in 1982-1983, plaintiff could show, at trial, an affirmative link between their deliberate indifference to the likely and severe consequences flowing from a prosecution based on manufactured and falsified evidence and his own prosecution based on such evidence.

Furthermore, defendants Wilhelm, McBride and Campbell are not entitled to qualified immunity on the malicious prosecution claim.  The court has determined that plaintiff has asserted a constitutional violation (malicious prosecution) and that his allegations are sufficient to support supervisor liability with respect to these defendants.  The court further finds that plaintiff's right was clearly established in 1982 and that a reasonable official responsible for supervising the police lab would have understood that, under the circumstances, his failure to train or supervise a forensic chemist demonstrated a reckless disregard of or deliberate indifference to that right.  Because in 1982 the law was clearly established that a constitutional right to be free from fabricated evidence and malicious prosecution existed and a supervisor who acquiesced in his subordinate's violation of those rights could be held personally liable, defendants Wilhelm, McBride and Campbell do not have qualified immunity from suit.  *See* <u>Kite v. Kelley</u>, 546 F.2d 334, 337 (10th Cir. 1976) (explaining that a supervisor must have participated or acquiesced in a constitutional deprivation).

Turning to the § 1983 claim for bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing, defendants Wilhelm, McBride Wilder, Campbell and Gonzales, argue that the claim against them in their individual capacities should also be dismissed because plaintiff has not pled their personal

participation in the alleged constitutional violation and because they are entitled to qualified immunity.

The court, however, concludes that plaintiff has set forth sufficient allegations to state a claim against defendants Wilder, Gonzales, Campbell, Wilhelm and McBride. According to plaintiff, "in 1988, an administrative policy was established by Defendants, acting together and led by Defendant Macy, to prevent post-conviction DNA testing aimed at proving innocence." (*Id.* ¶ 44). Plaintiff also alleges that "The actions of Ms. Gilchrist . . . were condoned by the Defendant supervisors." (*Id.* ¶ 79). Plaintiff further alleges that defendants "through their direct actions, and/or through their policies and procedures and/or through their reckless and improper supervision of Joyce Gilchrist acted with reckless disregard and indifference to David Bryson's constitutional rights in denying him access to evidence which would prove his innocence." (Compl. ¶ 37). These allegations, viewed in accordance with Rule 12(b)(6) standards, are sufficient to state § 1983 claims against defendants.

The court further concludes that defendants Wilhelm, McBride, Wilder, Campbell, and Gonzales are not entitled to qualified immunity on the bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing claim. The court has determined that plaintiff has asserted a constitutional violation and the court concludes that plaintiff's allegations are sufficient to support liability as supervisors under § 1983 with respect to these defendants. Because the law in and after 1988 clearly established a constitutional right to be free from bad faith denial of post-conviction access to potentially exculpatory evidence, and because a supervisor who participated or acquiesced in his subordinate's violation of those rights could be held personally liable, the court concludes that defendants Wilhelm, McBride, Wilder, Campbell and Gonzales, are not entitled to qualified immunity from plaintiff's § 1983 suit.

c. Section 1983 conspiracy claims

The court concludes that the § 1983 conspiracy claims should be dismissed against defendants Wilder and Gonzales on the basis that these defendants served as police chief after plaintiff's conviction, and on the basis that the claims, as previously discussed, are untimely.  In addition, the court concludes that the § 1983 conspiracy claims against defendants Wilhelm, McBride and Campbell, should be dismissed as untimely.

2. <u>State law claims</u>

As is the case with the claim of negligence resulting in wrongful imprisonment against Gilchrist, the complaint is not entirely clear whether plaintiff asserts that the alleged negligent acts of defendants Wilhelm, McBride and Campbell were committed within the scope of their employment or outside the scope of their employment.  However, in his response, plaintiff claims that "[e]ncouraging and rewarding the use of unreliable and/or false evidence and hiding evidence of innocence, paragraphs 54-73 of the complaint, are not good faith activities."  (Doc. no. 43, Pl.'s Resp. at 7.) Thus, the court agrees that the allegations are sufficient to suggest that these defendants were acting outside the scope of their employment.  Because compliance with the GTCA's notice requirements is not required in suits against officials acting outside the scope of their employment, *see*, <u>Pellegrino</u>, 63P.3d at 540, plaintiff's negligence claims against defendants, to the extent they are based upon defendants' asserted acts outside the scope of their employment, will not be dismissed.  To the extent plaintiff's claims are based upon defendants actions within the scope of their employment, the court need not address those claims as the court has previously dismissed the claims in connection with the City's motion.

The court concludes that to the extent plaintiff alleges negligence claims against defendants Wilder and Gonzales, based upon actions occurring prior to conviction, the claims should be dismissed for the reason previously stated in regard to the § 1983 malicious prosecution claims.  To the extent plaintiff alleges negligence claims against

Wilder and Gonzales based upon defendants' acts outside the scope of their employment and  based upon actions occurring after conviction, the court concludes that the claim should not be dismissed.  Plaintiff's allegations against defendants in this connection are sufficient.  Moreover,  compliance with the GTCA's procedural requirements prior to filing suit is not required.  Pellegrino, 63 P.3d at 540.  To the extent plaintiff's claims are based upon defendants' acts within the scope of their employment, the court need not address the claims as the court has previously dismissed the claims in connection with the City's motion.

Thus, plaintiff's § 1983 claims for malicious prosecution and bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing, against defendants Wilhelm, McBride, Wilder, Campbell and Gonzales (Count I), *in their official capacities*, are dismissed.  Plaintiff's § 1983 malicious prosecution claims against defendants Wilder and Gonzales, in their individual capacities, are also dismissed.   Plaintiff's § 1983 conspiracy claims against defendants Wilhelm, McBride, Wilder, Campbell and Gonzales (Count II), are dismissed.  Plaintiff's claims against defendants Wilder and Gonzales, for negligence resulting in wrongful imprisonment based upon defendants' asserted acts outside of their employment, and based upon activities occurring prior to conviction (Count V), are dismissed.

Plaintiff's § 1983 claims against defendants Wilhelm, McBride and Campbell, in their individual capacities, for malicious prosecution remain. Plaintiff's 1983 claims against defendants Wilhelm, McBride, Wilder, Campbell and Gonzales, in their individual capacities, for denial of post-conviction right to access to potentially exculpatory evidence for DNA testing remain.  Plaintiff's claims against defendants Wilhelm, McBride and Campbell, for negligence resulting in wrongful imprisonment based upon defendants' acts outside the scope of their employment (Count V) remain. Plaintiff's claims against defendants Wilder and Gonzales, for negligence based upon

defendants acts outside the scope of their employment and based upon actions that occurred after the conviction (Count V), remain.

D.     Defendant Robert H. Macy's Motion to Dismiss

       1. Section 1983 claims

Plaintiff asserts claims against Macy, the former District Attorney for Oklahoma County, in his individual capacity.  (Compl. ¶ 25.)  Again, plaintiff's claims against Macy involve the alleged constitutional violations of using manufactured and false evidence against him (malicious prosecution) and preventing access to potentially exculpatory evidence post-conviction, conspiring to deprive him of certain constitutional rights, and for negligence resulting in wrongful imprisonment. Macy contends that those claims should be dismissed because (1) he cannot be sued in his official capacity; (2) he is entitled to absolute immunity; (3) he is entitled to qualified immunity; (4) plaintiff's action is time-barred; (5) plaintiff's constitutional claims fail; and (6) allegations of negligence will not support a claim under § 1983. The court addresses Macy's arguments below, without regard to order, and as limited by the rulings set forth above.

              a. Immunity

Macy claims immunity from suit on multiple grounds.  As an initial matter, he argues that plaintiff complains about conduct that was taken in his official capacity and that "centers on prosecution functions."  (Doc. no. 34, Def's Mot. at 10.)  As a result, Macy contends that he is protected from suit by the Eleventh Amendment.  (*Id.*) However, the complaint is very clear that plaintiff intends to bring suit against Macy solely in his individual capacity (Compl. ¶ 25), for which the Eleventh Amendment is no bar, Hafer v. Melo, 502 U.S. 21, 30 (1991).

> [T]he Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state.  However, Hafer confirms that the Eleventh Amendment does not bar a suit seeking

damages against state officials in their individual capacities.  Although [a prosecutor] therefore has no immunity from suit solely because of his status as a state prosecutor, he does have personal immunity . . . for the initiation and pursuit of the criminal prosecution against [plaintiff].

Hunt v. Bennett, 17 F.3d 1263, 1267 (10th Cir. 1994) (citations omitted).

Macy is correct, however, that some of plaintiff's allegations involve actions for which he is personally immune from suit.  As indicated, prosecutors enjoy absolute immunity for activities "intimately associated with the judicial phase of the criminal process. "  Imbler v. Pachtman, 424 U.S. 409, 430 (1976).  In contrast, they are entitled only to qualified immunity for investigative or administrative functions. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993).

[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity.  Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made.

Id.

In this case, to the extent that plaintiff seeks to impose liability for Macy's actions in reviewing and evaluating evidence and presenting evidence against plaintiff in *plaintiff's* case, Macy is absolutely immune.  Cf. Def.'s Mot. at 13 (explaining that Macy had "no personal participation in the trial of the case").  Likewise, any personal involvement in pressuring plaintiff's former girlfriend to change her testimony would be an out-of-court effort to control the presentation of a witness's testimony, for which he would be absolutely immune from suit.  *See* Buckley, 509 U.S. at 273-274.

However, plaintiff also contends that Macy formulated and imposed policies and practices of suppressing material exculpatory evidence and manufacturing incriminating evidence that resulted in the false hair analysis and a witness being

31

pressured to change her story.  He also contends that Macy established a policy to prevent post-conviction DNA testing aimed at proving innocence.  Because personal liability may arise when a policy or custom established or utilized by an official results in the deliberate indifference to the constitutional rights of others, City of Canton, 489 U.S. at 388; Meade, 841 F.2d at 1528, plaintiff's allegations are sufficient to support a claim against Macy personally.  Moreover, because those policies and practices were allegedly not instigated in his role as an advocate but while acting as an administrator, Macy would not be entitled to absolute immunity. *See* Buckley, 509 U.S. at 273.

Macy is not entitled to qualified immunity for establishing those policies or customs because a reasonable official in his position in 1982 would have appreciated that the use of false evidence or perjured testimony violated the constitutional rights of plaintiff.  Therefore, the § 1983 malicious prosecution claim against Macy, as described above, will not be dismissed.

The court also finds that defendant Macy is not entitled to qualified immunity for the alleged bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing.  In Brady, decided in 1963, the Supreme Court ruled that as a matter of due process a defendant in a criminal case is entitled upon request to disclosure from the prosecution of all "favorable" and "material" evidence in the state's possession. *Id*. at 87.  As stated by the court in Wade, "[a]lthough Brady's holding specifically contemplated evidence of known exculpatory value, its central premise was adapted to evidence of uncertain exculpatory value, such as the untested DNA evidence in this case." Wade, 460 F. Supp. 2d at 245, citing to and discussing the cases of Valenzuela-Bernal, Ritchie, and Youngblood.  Subsequently, in Youngblood, the Supreme Court ruled that failure to preserve "potentially useful evidence" would not violate the due process clause "unless a criminal defendant can show bad faith on the part of the police." Young blood, 488 U.S. at 58.  In the instant

case, plaintiff alleges that Macy's function as a prosecutor ended in 1983. According to plaintiff, Macy knew DNA analysis to be a reliable identification technique in 1987 and publicly stated in 1988 that it had the capacity to exonerate. Despite this knowledge (and the fact that plaintiff's conviction was obtained prior to the emergence of DNA analysis as a reliable identification technique), plaintiff alleges that Macy established a policy to prevent post-conviction DNA testing aimed at proving innocence. This policy, plaintiff alleges, continued until Macy's retirement in 2001. Plaintiff alleges that after discovery of the evidence in 1990, Macy, acting through his assistant, declined to agree to the testing of the evidence. He also alleges that in 1996, Macy actually sought to have the forensic evidence destroyed. He further alleges that Macy, through his assistant, told Gilchrist to ignore plaintiff's written request to preserve the evidence. Plaintiff further alleges that Macy continued to oppose the release of plaintiff, despite knowledge of the exonerating results of the April 1997 testing. A reasonable official in Macy's position in 1988 and thereafter would have appreciated or had fair warning that the bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing violated the constitutional rights of plaintiff. The court therefore finds that Macy is not entitled dismissal of the § 1983 claim for bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing.[10]

   b. Timeliness of § 1983 claims

   Defendant Macy contends that plaintiff's § 1983 claims for malicious prosecution and bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing are time-barred. According to defendant Macy, plaintiff's claims accrued for purposes of the applicable two-year statute of limitations on

---

[10]To the extent that defendant Macy argues that plaintiff's allegations supporting his § 1983 actions give rise only to negligent behavior, the court disagrees. The court concludes that the allegations are sufficient to support liability under § 1983.

October 15, 1999, the date he was released from prison.  The court disagrees.  As previously discussed, the court concludes that the claims did not accrue until the charges against him were dismissed on June 24, 2003, because success on both claims, as pled by plaintiff, would have necessarily implied that his conviction was wrongful. Heck v. Humphrey, 512 U.S. 477 (1994).  The original complaint was filed on May 27, 2004, clearly within the applicable two-year statute of limitations, and the instant complaint was timely filed pursuant to the Oklahoma savings provision.  The court therefore rejects defendant Macy's argument that the § 1983 claims are untimely because the complaint was not filed within two years of October 15, 1999.     As to the § 1983 conspiracy claim, the court concludes, as previously discussed, that such claim is time-barred.  The May 27, 2004 complaint did not suggest that there was any concerted action between defendant Macy and the other defendants to manufacture or suppress evidence.  Because the factual underpinnings of the conspiracy claim were not included in the original complaint, the court concludes that the Oklahoma savings provision did not apply to the conspiracy claim and the  conspiracy claim was not timely filed.  The court therefore concludes that the § 1983 conspiracy claim against defendant Macy should be dismissed.

    2.  <u>State law claim</u>

    Finally, despite defendant Macy's arguments to the contrary, the court concludes that plaintiff's claim for negligence resulting in wrongful imprisonment  is sufficient to withstand the present motion.  Plaintiff states that his complaint alleges bad faith on the part of defendant Macy (¶¶ 42-53).  (Doc. no. 42, Pl.'s Supp. Resp. at 1.)  The court, guided by the Rule 12(b)(6) standards for reviewing plaintiff's complaint, agrees.

    Thus, plaintiff's § 1983 claims against Macy for malicious prosecution and for bad faith denial of post-conviction access to potentially exculpatory evidence (Count I) remain.  Plaintiff's § 1983 conspiracy claim against Macy (Count II) is dismissed

as untimely.  Plaintiff's negligence claim for wrongful imprisonment based on actions taken outside the scope of Macy's employment (Count V) also remains.

## CONCLUSION

Defendant Joyce Gilchrist's Motion to Dismiss (doc. no. 16), Defendant City of Oklahoma City's Motion to Dismiss (doc. no. 12), Motion to Dismiss of Defendants Wilhelm, McBride, Wilder, Campbell, and Gonzales (doc. no. 39), and Defendant Robert H. Macy's Motion to Dismiss (doc. no. 34), are **GRANTED** in part and **DENIED** in part.

Plaintiff's claims under § 1983 for malicious prosecution and bad faith denial of post-conviction access to potentially exculpatory evidence against defendants Gilchrist, Wilhelm, Campbell, McBride, Wilder and Gonzales (Count I), *in their official capacities*, are **DISMISSED**.  Plaintiff's conspiracy claims under § 1983 against defendants Gilchrist, Wilhelm, Campbell, McBride, Wilder, Gonzales and Macy (Count II), are **DISMISSED**.  Any § 1983 claims alleged under the First, Fourth, Fifth, Sixth and Eighth Amendments against all defendants (Count I and Count III) are **DISMISSED**.  Plaintiff's request for punitive damages against defendant, City for the § 1983 claims is **DISMISSED**.  Plaintiff's § 1983 malicious prosecution claims against defendants Wilder and Gonzales (Count I), *in their individual capacities*, are **DISMISSED**.  Plaintiff's negligence claim for wrongful imprisonment against defendant City, based upon the acts of defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell and Gonzales within the scope of their employment (Count V), are **DISMISSED**.  Plaintiff's negligence claims for wrongful imprisonment against defendants Wilder and Gonzales, based upon actions outside the scope of their employment and based upon actions that occurred prior to conviction (Count V), are **DISMISSED**.  Plaintiff's claim for wrongful conviction against the City (Count VI) is **DISMISSED**.

Plaintiff's § 1983 malicious prosecution claims against defendants Gilchrist, Wilhelm, McBride, and Campbell, *in their individual capacities*, and Macy (Count I) remain.  Plaintiff's § 1983 claims for bad faith denial of post-conviction access to potentially exculpatory evidence for DNA testing against defendants Gilchrist, Wilhelm, McBride, Wilder, Campbell, Gonzales, *in their individual capacities*, and Macy (Count I), remain.  The § 1983 claims against the City (Count III) remain.

Plaintiff's state law claims against defendants Gilchrist, Wilhelm, McBride, Campbell and Macy, for negligence resulting in wrongful imprisonment, based upon defendants' acts outside the scope of their employment (Count V) remain.  Plaintiff's state law claims against defendants Wilder and Gonzales, based upon defendants acts outside the scope of their employment and based upon actions that occurred after conviction (Count V) remain.

IT IS SO ORDERED this 1st day of March,  2007.


_____

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE


05-1150p009(pub).wpd