FILED
United States Court of Appeals
Tenth Circuit

July 28, 2008

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DAVID JOHNS BRYSON,

    Plaintiff-Appellee,

v.

SAM GONZALES,

    Defendant-Appellant.

No. 07-6071

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. NO. 05-CIV-1150-F)**

---

Kenneth Jordan, Municipal Counselor (Richard C. Smith & Amanda B. Carpenter, Assistant Municipal Counselors, with him on the briefs), Oklahoma City, Oklahoma, for Defendant-Appellant.

Michael Salem, Salem Law Offices (Mark Barrett with him on the briefs), Norman, Oklahoma, for Plaintiff-Appellee.

---

Before **McCONNELL**, **TYMKOVICH** and **GORSUCH**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

    David Bryson was convicted of rape and spent 19 years in jail until exonerated by DNA evidence. He then sued Oklahoma City and a number of officials, including Police Chemist Joyce Gilchrist, District Attorney Robert

Macy, and former Oklahoma City Police Chief Sam Gonzales, alleging that they falsely procured his original conviction and then prevented him from obtaining access to DNA evidence that he believed would demonstrate his innocence.  Mr. Bryson's lawsuit may ultimately demonstrate patently unconstitutional conduct by several Oklahoma officials and raise novel issues about the constitutional right to access DNA evidence.  This interlocutory appeal, however, presents a narrow sliver of that suit—whether the complaint states a claim against one defendant, Mr. Gonzales, for denying Mr. Bryson access to post-conviction DNA evidence for testing.  We conclude that it does not.

## I. BACKGROUND

At this stage of the litigation, the following is undisputed.  In September 1982, a woman reported being raped in Oklahoma City, eventually fending off her assailant by biting his penis.  Not long after, David Bryson received treatment for a wound to his penis.  The wound somehow came to the attention of law enforcement and although there were differences between the wounds and Mr. Bryson had an alibi, he was deemed a suspect.  In October, 1982, Mr. Bryson was arrested for rape.  He pled not guilty and went to trial.

Part of the evidence against him was a set of hairs found on or near the victim.  An Oklahoma police chemist, Joyce Gilchrist, testified that "she believed each person's hair was unique and that she could identify the unique characteristics" of the hair, and that these hairs matched Mr. Bryson's.  App. 14.

This evidence, however, was "bogus." App. 24. Ms. Gilchrist has since been subject to repeated reprimand by various professional investigations and the Oklahoma Court of Criminal Appeals for similar misconduct in numerous cases. *See generally Pierce v. Gilchrist*, 359 F.3d 1279, 1283–84 (10th Cir. 2004). There was also semen in the victim's body, although DNA testing was not an option at the time. In February, 1983, a jury convicted Mr. Bryson of first-degree rape (with a sentence of 75 years) as well as of kidnaping, anal sodomy, and two counts of oral sodomy (each with a ten-year sentence running consecutively to his rape sentence). The Oklahoma Court of Criminal Appeals affirmed the convictions and sentences. *Bryson v. State*, 711 P.2d 932 (Okla. Crim. App. 1985).

From prison, Mr. Bryson continued to pursue his claims of innocence. In June, 1988, defense counsel asked Ms. Gilchrist for access to DNA evidence from the scene of the crime. (Principally, we believe, the hair and semen.) Ms. Gilchrist responded that the evidence had been destroyed, although this was not true. In late 1990, an investigator for Mr. Bryson discovered the lie, and learned that the evidence was in fact in a safe at the office of the Oklahoma County Court Clerk. Mr. Bryson's lawyer went to the Oklahoma County District Attorney Robert Macy to get access to the evidence but was again rebuffed.

Mr. Bryson then turned to the courts. In 1995, he filed a petition for a state writ of mandamus to compel access to DNA evidence and a request for post-

conviction relief. After several false starts and rejections—he was opposed by the state throughout—he eventually prevailed on both. In 1997 the OCCA granted him access to the DNA evidence. Testing showed that the DNA did not match his, and in 1999 the OCCA ordered his release pending retrial. For four more years the state contemplated prosecuting him again, but ultimately dropped the charges in June, 2003.

With the nightmare finally over, Mr. Bryson began to seek redress. In May, 2004, he filed an earlier version of this lawsuit in the United States District Court for the Western District of Oklahoma. He voluntarily dismissed this suit in October of that year and filed the current complaint in September, 2005. The complaint alleges that Ms. Gilchrist and Mr. Macy committed a number of constitutional torts under 42 U.S.C. § 1983 as well as torts under state law. It also named as defendants two supervisors of Ms. Gilchrist, three Oklahoma City police chiefs, and the city of Oklahoma City itself.

As police chief, Defendant-Appellant Sam Gonzales exercised authority over the Oklahoma City Police Department Laboratory, and thus over Ms. Gilchrist. He served as police chief from 1991 to 1997. Thus, he arrived after Mr. Bryson's prosecution and conviction, after Ms. Gilchrist lied about the existence of the DNA evidence, and after Mr. Bryson's counsel shifted his attention to procuring the sample from the district attorney to the court. By the time Mr. Gonzales became chief, the DNA evidence was physically located in a

safe at the Oklahoma County Court.  Eventually, the evidence migrated from there back to the district attorney's office and later to Ms. Gilchrist; the district attorney "had access to and did in fact control" it throughout this time.  App. 22.

The defendants all moved to dismiss, and the district court dismissed some of the claims.  In particular, the court dismissed several claims against Mr. Gonzales, including a theory of "malicious prosecution" under the Due Process Clause and the Fourth Amendment.  (This was the theory at issue in *Pierce*, 359 F.3d at 1285–97.)  The court reasoned that because the prosecution began and ended in 1982–83, eight years before Mr. Gonzales became police chief, the complaint had not alleged his involvement in the violation.

However, the district court denied the motion to dismiss a second claim: that Mr. Gonzales had unconstitutionally prevented Mr. Bryson from obtaining access to DNA evidence during his tenure as chief.   Dealing with all of the police chiefs and supervisors collectively, the court noted that the complaint alleged that "Defendants" had been "led by [Mr.] Macy" to establish a policy prohibiting post-conviction DNA testing in 1988, that Ms. Gilchrist's actions "were condoned by the Defendant supervisors" and that defendants "through their direct actions, and/or through their policies and procedures and/or through their reckless and improper supervision of Joyce Gilchrist acted with reckless disregard and indifference to David Bryson's constitutional rights in denying him access to evidence which would prove his innocence."  App. 465.  The court concluded that

this was sufficient to establish supervisory liability for all of the police chiefs and supervisors, apparently including the ones who did not arrive until after 1988. The court also concluded that "[b]ecause the law in and after 1988 clearly established a constitutional right to be free from bad faith denial of post-conviction access to potentially exculpatory evidence," none of these defendants were entitled to qualified immunity. App. 465. Again, it did not deal with Mr. Gonzales individually. Mr. Gonzales appealed this portion of the district court's order to this Court.

## II. INTERLOCUTORY APPELLATE JURISDICTION

We confront this case on an interlocutory appeal from an order denying a motion to dismiss for qualified immunity. Because many claims remain unsettled below, final judgment has not been entered, but such motions are nonetheless appealable because of the special nature of qualified immunity. *Mitchell v. Forsyth*, 472 U.S. 511, 524–30 (1985). Perhaps sensing that the appealable issues are close ones, both parties urge us to consider other unrelated issues and resolve the case on those grounds instead. Mr. Gonzales asks us to hold that the statute of limitations has run on Mr. Bryson's claim against him. Mr. Bryson asks us to hold that even if he has not stated a claim for unconstitutional withholding of DNA evidence, he has stated a different claim, for malicious prosecution. We lack jurisdiction to accept either invitation. We cannot consider a statute of limitations defense on an interlocutory appeal for the separate defense of

-6-

qualified immunity.  *Wilkins v. DeReyes*, 528 F.3d 790, 796 (10th Cir. 2008).  For the same reason, we cannot consider a different claim as an alternative ground for affirming the district court's ruling on *this* issue—especially where, as here, the relevant conduct, time frames, and possible damages arising from the alternative claim are different.  The chance for appellate review of those issues will come when final judgment is entered.  *See* Fed. R. Civ. P. 54(b).  The only issues that properly belong in an interlocutory appeal for qualified immunity are the existence of a constitutional violation and whether it was clearly established at the time of the defendant's conduct.  *Saucier v. Katz*, 533 U.S. 194 (2001), requires us to consider those issues in that order.[1]

There is one potential exception to these restrictions on our jurisdiction: We have held that pendent appellate jurisdiction allows consideration of otherwise nonappealable issues when they are "'inextricably intertwined with the appealable decision, or where review of the nonappealable decision is necessary to ensure meaningful review of the appealable one.'"  *Wilkins*, 528 F.3d at 796 (quoting *Moore v. City of Wynnewood*, 57 F.3d 924, 930 (10th Cir. 1995)); *see also Rendall-Speranza v. Nassim*, 107 F.3d 913, 916–17 (D.C. Cir. 1997) (exercising pendent appellate jurisdiction over statute of limitations defense).  To

---

[1] We note that the Supreme Court is currently considering whether to overrule *Saucier*.  *See Pearson v. Callahan*, 128 S. Ct. 1702 (Mar. 24, 2008), *granting cert. in Callahan v. Millard County*, 494 F.3d 891 (10th Cir. 2007).  Until then, *Saucier* remains good law, and we do not decide how overruling it might affect our interlocutory appellate jurisdiction.

be sure, pendent appellate jurisdiction is hard to reconcile with the collateral order doctrine, since appealability is premised on the ability to decide the qualified immunity issue "in isolation from the remaining issues of the case." *Mitchell*, 472 U.S. at 529 n.10. Pendent appellate jurisdiction is therefore disfavored in the qualified immunity context. *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 43–51 (1995) (disfavoring, though not foreclosing, such jurisdiction); *Fogarty v. Gallegos*, 523 F.3d 1147, 1153–55 & n.7 (10th Cir. 2008) (declining pendent appellate jurisdiction in qualified immunity appeal); *but see Moore*, 57 F.3d at 929–31 (exercising pendent appellate jurisdiction through a "narrow exception[] left open by *Swint*"). Even assuming that pendent appellate jurisdiction is not forbidden, the issues offered by the parties here do not justify it, because they are neither "inextricably intertwined" with the qualified immunity issue nor necessary to "meaningfully review" it. Mr. Gonzales's immunity defense can be resolved without delving into the malicious prosecution or timeliness issues.

### III. SUFFICIENCY OF THE COMPLAINT

Before considering whether the constitutional right invoked by Mr. Bryson was clearly established at the time of its alleged violation, we must decide whether the actions alleged in the complaint are sufficient to state a claim of constitutional violation against the appellant, Mr. Gonzales. *Saucier*, 533 U.S. at 201. We assume—although we do not decide—that under some circumstances

there is a constitutional right of access to DNA evidence that might prove one's innocence. However, even if this is so, the complaint does not allege enough facts for us to infer Mr. Gonzales's involvement in any such violation. We first explain the pleading standard, then explain why Mr. Bryson's complaint falls short.

**A. Pleading Standard**

To state a claim, a plaintiff's complaint must "show[] that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). This means that the plaintiff must allege enough factual matter, taken as true, to make his "claim to relief . . . plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007). This is not to say that the factual allegations must themselves be plausible; after all, they are assumed to be true. It is just to say that relief must follow from the facts alleged. *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008).

If a complaint explicitly alleges every fact necessary to win at trial, it has necessarily satisfied this requirement. If it omits some necessary facts, however, it may still suffice so long as the court can plausibly infer the necessary unarticulated assumptions. But if the complaint is sufficiently devoid of facts necessary to establish liability that it "encompass[es] a wide swath of conduct, much of it innocent," a court must conclude that "plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Id.* at 1247 (quoting

*Twombly*, 127 S.Ct. at 1974). Plaintiffs thus omit important factual material at their peril. While a complaint must be "short and plain," it must also "show[]" (not merely assert) that relief is appropriate if it is true. Fed. R. Civ. P. 8(a)(2). Thus, "[d]espite the liberality of modern rules of pleading, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *In re Plywood Antitrust Litigation*, 655 F.2d 627, 641 (5th Cir. Unit A Sept. 1981); *see generally* Charles B. Campbell, *A "Plausible" Showing After* Bell Atlantic Corp. v. Twombly, 9 Nev. L.J. (forthcoming 2008). This is the compromise enacted by Rule 8's notice pleading. Technical fact pleading is not required, but the complaint must still provide enough factual allegations for a court to infer potential victory.

     This pleading requirement serves two purposes. First, it ensures that defendants know "the actual grounds of the claim against them," and can therefore prepare a defense. *Robbins*, 519 F.3d at 1248. Second, it "avoid[s] ginning up the costly machinery associated with our civil discovery regime on the basis of 'a largely groundless claim.'" *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., dissenting) (quoting *Twombly*, 127 S.Ct. at 1966). The latter concern is especially pertinent in qualified immunity cases, where the very purpose of interlocutory appeal is "to spare [official defendants] from the ordeal of discovery if the complaint fails to allege a constitutional violation or if

the alleged violation was not clearly established." *Robbins*, 519 F.3d at 1248-49. Often these two purposes will be related: a complaint that omits too many crucial facts can both fail to notify defendants how to prepare a defense and waste time and money on fruitless discovery for a losing claim. *Id.* at 1248.

As we will explain, Mr. Bryson's complaint does not allege sufficient participation in the alleged wrongs, and so fails to state a claim against Chief Gonzales.

### B. Allegations Involving Mr. Gonzales

At issue here is Mr. Bryson's assertion of a constitutional right "to gain access to evidence used in his conviction," which if subjected to DNA testing "can definitively establish his actual innocence." Aplee's Br. at 1. The existence and contour of this right have split the Courts of Appeals at least three ways. The Fourth Circuit has held that such claims can never be brought under § 1983, because they would undermine the finality of criminal judgments and intrude on the legislative process of creating the proper process for post-conviction DNA testing. *Harvey v. Horan*, 278 F.3d 370, 374–77 (4th Cir. 2002). The Ninth Circuit has disagreed, holding that such claims are an extension of the disclosure requirement of *Brady v. Maryland*, 373 U.S. 83 (1963) "as a post-conviction right." *Osborne v. Dist. Attorney's Office*, 521 F.3d 1118, 1128 (9th Cir. 2008) (citing *Thomas v. Goldsmith*, 979 F.2d 746, 749–50 (9th Cir. 1992)). The Eleventh Circuit has taken a middle course, rejecting a constitutional claim by a

plaintiff who had not consistently maintained his actual innocence, but "not foreclos[ing] the possibility that a § 1983 plaintiff could, under some extraordinary circumstances, be entitled to post-conviction access to biological evidence for the purpose of performing DNA testing." *Grayson v. King*, 460 F.3d 1328, 1339 (11th Cir. 2006); *id*. at 1340–43 (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *see also Wade v. Brady*, 460 F. Supp. 2d 226, 246–49 (D. Mass. 2006) (Gertner, J.); *McKithen v. Brown*, No. 02-1670, 2008 WL 2791852, *44 (E.D.N.Y. July 21, 2008); *Harvey v. Horan*, 285 F.3d 298, 315–18 & n.6 (4th Cir. 2002) (Luttig, J., respecting the denial of rehearing en banc) (all recognizing a procedural due process right to post-conviction access to DNA evidence under certain circumstances).

We need not resolve this controversy and do not decide whether the Due Process Clause protects such a right. Whatever the contours of the right to obtain access to DNA evidence, assuming it exists, the complaint fails to allege Mr. Gonzales's participation in the violation of the right. The complaint contains no allegation that Mr. Gonzales ever refused a request for DNA evidence, nor an allegation that he was sufficiently involved in Mr. Macy's and Ms. Gilchrist's actions to justify liability for their misdeeds. Nor is there any factual allegation from which we can plausibly infer these actions.

The complaint mentions Mr. Gonzales only three times[2]—once in connection with a § 1983 violation not appealed here, and twice in connection with this claim. According to the complaint:

> Defendant Sam Gonzales was Oklahoma City Police Chief from 1991 until 1997 and during his tenure was responsible for development and enforcement of administrative policies related to the Oklahoma City Police Laboratory and was responsible for the supervision and training of Joyce Gilchrist. He is sued individually and in his official capacity.

App. 18–19. And:

> Defendants Gilchrist, Campbell, Wilhelm, Wilder, McBride, Gonzales, and Oklahoma City, in derogation of their duties to establish fair and constitutional administrative policies, and in disregard of Mr. Bryson's constitutional rights, allowed Mr. Macy to exercise control over evidence and influence administrative policy decisions concerning the testing, storage, disposal, and destruction of evidence. Once such deference to Mr. Macy was established, no Defendant took material action to correct or modify Mr. Macy's influence over police policy.

App. 20. Even drawing all plausible inferences in Mr. Bryson's favor, these allegations are not enough.

---

[2] In urging us to rule in their favor on this appeal, both sides repeatedly refer to facts outside of the complaint—in particular facts alleged in a document called the "Fischer Complaint." *See* App. 67–112. This complaint is not operative: it was filed in May, 2004, then withdrawn that October. Only facts alleged in the operative complaint are assumed to be true at this stage of the litigation; facts alleged only in other suits or in inoperative complaints cannot be used by either side in resolving a motion to dismiss unless they have been incorporated into the operative complaint. *See Procter & Gamble Co. v. Haugen*, 317 F.3d 1121, 1129 n.4 (10th Cir. 2003); *MacArthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002).

First, we consider Mr. Gonzales's own conduct. He did not become police chief until 1991. This was eight years after Mr. Bryson was convicted, three years after Ms. Gilchrist (falsely) claimed that the evidence he requested had been destroyed, and one year after Mr. Bryson discovered the lie and was again rebuffed by Mr. Macy. So far as the complaint tells us, Mr. Gonzales had nothing to do with any of these actions, which appear to be the gravamen of Mr. Bryson's claim that his due process rights were violated.

The year prior to Mr. Gonzales's arrival in 1991, the complaint alleges that the evidence was in the custody of the court clerk and that Mr. Bryson sought access to the DNA evidence through the district attorney, who (as discussed below) is not under Mr. Gonzales's supervision. The complaint does not allege that Mr. Bryson asked the Oklahoma City Police Department for access to the evidence any time after Mr. Gonzales's arrival. Indeed, the complaint does not allege any relevant acts by the plaintiff or any defendant between 1990 and 1995, when Mr. Bryson's attorney filed a petition in state court for a writ of mandamus to compel access to the evidence, along with a request for post-conviction relief. App. 22; 360. The matter remained under adjudication in state court until approximately the time of Mr. Gonzales's departure in 1997. The complaint contains no allegation of resistance—by Mr. Gonzales or anyone else—to the court's process or eventual order to grant Mr. Bryson access to the evidence.

This is not enough to support a constitutional claim against this defendant. If Mr. Gonzales or his department was never asked to give Mr. Bryson access to the DNA evidence during his tenure in office, he could not have unconstitutionally refused it. Once the state judicial process was in motion, Mr. Gonzales was not required to turn over the evidence before the court made a ruling. We do not mean to fault Mr. Bryson for turning to the judicial system to vindicate his claims; this was likely a wise course given the recalcitrance he faced. But Mr. Gonzales cannot be held individually liable for the consequences of Ms. Gilchrist's and Mr. Macy's recalcitrance from 1982 to 1990.

Second, the complaint alleges that Mr. Gonzales "was responsible for the supervision and training of Joyce Gilchrist." App. 19. Mr. Bryson contends that even without alleging Mr. Gonzales's personal malfeasance, this is enough to hold him liable for Ms. Gilchrist's unconstitutional acts "as her supervisor." Aplee.'s Br. 25. This was the theory relied on by the district court. But supervisory liability is "not . . . a theory of respondeat superior." *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000). Supervisors are not strictly liable for the torts of their underlings; instead, they are liable only when they "personally participated in the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). "[J]ust as with any individual defendant, the plaintiff must establish 'a deliberate, intentional act by the supervisor to violate constitutional rights.'" *Id.* at 994–95 (quoting *Woodward v. City of Worland*, 977 F.2d 1392,

1399 (10th Cir. 1992)). That is why we require evidence of an "affirmative link" between a supervisor's conduct and the constitutional violation before liability can attach. *Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008).

Here, the complaint contains no allegation of Mr. Gonzales's personal participation in Ms. Gilchrist's torts, and therefore no such link. Ms. Gilchrist's alleged misconduct—principally, her lie to the defense that the DNA evidence had been destroyed—occurred before Mr. Gonzales arrived. There is no allegation that Ms. Gilchrist committed any misfeasance on his watch that he should have prevented by proper supervision.[3] Absent any such allegations of personal involvement, Mr. Gonzales does not answer for Ms. Gilchrist's torts. We do not mean to overstate Mr. Bryson's burden—"[h]eightened pleading is not required in § 1983 cases," *Fogarty*, 523 F.3d at 1164—but the complaint does not contain "enough factual matter (taken as true) to suggest that [Mr. Bryson] is entitled to relief" from Mr. Gonzales. *Robbins*, 519 F.3d at 1247 (internal quotation marks omitted).

Third, the complaint alleged that Mr. Gonzales, among others, "allowed [the district attorney, defendant Robert Macy] to exercise control over evidence

---

[3] An amendment to the complaint alleges that in August, 1996, Mr. Bryson's attorney "wrote a letter to Joyce Gilchrist asking her to preserve the serology evidence in Mr. Bryson's case. The letter stated 'we intend to have these items submitted for DNA testing in the near future.' Defendant Macy, again through Sandra Elliott, told Ms. Gilchrist that Ms. Gilchrist could ignore" the request. But Ms. Gilchrist apparently did not ignore the request to preserve the evidence, and instead preserved it.

and influence administrative policy decisions concerning the testing, storage, disposal, and destruction of evidence." App. 20. It should be noted, first, that as an independent elected official the district attorney is not under the supervision of the chief of police. Mr. Macy, who is a defendant, may well have violated Mr. Bryson's rights, *see McKithen*, 2008 WL 2791852, at \*17-\*19 (holding that the duty to provide post-conviction access to DNA access pertains to the prosecutor), but Mr. Macy's actions are not attributable to Mr. Gonzales. It is unsurprising—and certainly not unconstitutional—that the district attorney would have some "influence" over decisions of a legal nature, such as retention of evidence. As to "control" over the evidence, the complaint alleges that during Mr. Gonzales's tenure as police chief, physical custody of Mr. Bryson's DNA evidence shifted from the county court, to the district attorney, to Ms. Gilchrist, and thus for some period of time Mr. Macy exercised control over it. But we have searched Mr. Bryson's briefs in vain for any explanation why this would have been a constitutional violation on Mr. Gonzales's part. The evidence was not destroyed. Mr. Gonzales did not refuse any request to release it. There is no allegation that Mr.Gonzales did anything other than allow the judicial process to run its course—a process in which Mr. Macy represented the interests of the state in court.

Finally, there are also some conclusory allegations that simply name the "Defendants" generically—such as that "Defendants, through resort to unreliable

evidence, and sometimes fraudulent and/or grossly reckless techniques, took a twenty-year chunk out of the heart of David Bryson's lifetime on earth." App. 13. But none of these allegations are helpful in figuring out what *facts* Mr. Bryson means to allege about *Mr. Gonzales's* conduct: "In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities. Therefore it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins*, 519 F.3d at 1249–50 (emphasis in original). They do not help Mr. Bryson state a claim.

## IV. CONCLUSION

Mr. Bryson may have many valid claims against many people. However this claim against Mr. Gonzales—as it is currently pled—is not one of them. We **REVERSE** the district court's decision denying Mr. Gonzales's motion to dismiss the claim that he unlawfully denied Mr. Bryson access to DNA evidence. As in *Robbins*, 519 F.3d at 1253–54, we **REMAND** with orders to dismiss this portion of the claim without prejudice.